JANET P. JEROME ET AL., EXECUTRICES (ESTATE OF FRANKLIN S. JEROME) v. JANET P. JEROME ET AL.

SUPERIOR COURT      FAIRFIELD COUNTY      FILE No. 83555

Memorandum filed January 21, 1952.

*Cummings & Lockwood,* of Stamford, for the Plaintiffs.

*Alcorn, Bakewell & Alcorn,* of Hartford, and *Herbert L. Cohen,* of Bridgeport, for the Defendants.

CULLINAN, J. The decedent, Franklin S. Jerome, died on June 22, 1948, in the town of Orange possessed of an estate whose appraised value is in excess of two and one-half million dollars. This action, seeking an interpretation and construction of his last will, has been brought by the executrices under the instrument, acting in their fiduciary capacities, against Janet Pouch Jerome, widow of the decedent, as well as Louise Jerome McMillan, a daughter of the decedent's first marriage.

On May 16, 1936, Mr. Jerome executed the will which is the subject of controversy. He had been previously married and a daughter, the defendant, Mrs. McMillan, is the issue of that

marriage. At the time of execution of the will on May 16, 1936, Mr. Jerome contemplated marrying Mrs. Janet Pouch Alford and thereafter married Mrs. Alford, the present defendant, Janet Pouch Jerome.

In his will, which has been admitted to probate in the Probate Court for the district of New Haven, Mr. Jerome made the following provisions relevant to the issues before me: 1. He directed his executors to "pay all my just and lawful debts, funeral and testamentary expenses." 2. He created in article fifth a trust for the benefit of the defendant, Janet Pouch Jerome, his widow, consisting of one-half of the residue of his estate and conferred upon her a general testamentary power of appointment over the corpus. 3. He created in article sixth a trust for the benefit of his daughter, Louise Jerome McMillan, consisting of the remaining one-half of his residuary estate, with like power of appointment.

On July 18, 1945, the Connecticut Proration Act (General Statutes §§ 2075-2081) was approved. Mr. Jerome did not make or attempt to make any change in his will after the adoption of that statute.

On April 2, 1948, the so-called marital deduction of the Revenue Act of 1948 (§ 812) became effective 62 Stat. 118, 26 U. S. C. § 812 (e) (1) (Sup. 4, 1951). Mr. Jerome neither made nor attempted to make any change in the provisions of his will after the adoption of the so-called marital deduction.

The pertinent Connecticut statute, application of which is to be determined in this proceeding, is § 2076 which provides, in substance, that any state or federal death tax shall "except when a testator otherwise directs in his will" be "equitably prorated among the persons interested in the estate to whom such property is or may be transferred or to whom any benefit accrues." The statute further provides that "in making such proration allowances shall be made for any exemptions granted by the act imposing the tax and for any deductions allowed by such act for the purpose of arriving at the value of the net estate."

Section 812 of the Revenue Act of 1948, in substance, exempts from federal estate taxation so much of the estate of a decedent as is bequeathed, devised or otherwise passed to his surviving spouse, not in excess of 50 per cent of the adjusted gross estate, as therein defined, by the allowance of a marital deduction, so-called.

The trust created in article fifth for the benefit of the defend-ant widow, Janet Pouch Jerome, qualifies for the marital de-duction, and, as a result thereof, the estate is entitled to a sub-stantial marital deduction in computing the net estate of the decedent which will be subject to federal estate tax. If this tax saving is passed along to the widow under the provisions of the proration statute ("allowances shall be made for any ex-emptions granted by the act imposing the tax and for any de-ductions allowed by such act"), her trust, under article fifth, will be approximately $180,000 larger in amount than the trust for the benefit of the other defendant, Louise Jerome McMillan.

Mrs. McMillan contends that her father's will, read as a whole, evidences an intent that she and her stepmother shall share equally in the distribution of the residue of his estate. Mrs. Jerome, on the other hand, contends that while her hus-band's will speaks of "halves" with respect to the creation of the two trusts, nonetheless, the equality which he intended is an equality to be arrived at before, not after, taxes and that Mr. Jerome intended a gross equality rather than a net equality.

It is undisputed that the Proration Act was in effect when Mr. Jerome died. The application of a proration statute is de-termined by reference to the date of death rather than the date of execution of the will. McLaughlin v. Green, 136 Conn. 138; Security First National Bank v. Wellslager, 88 Cal. App. 2d 210.

If, then, Mr. Jerome's will is to be interpreted in the light of the law which prevailed at the effective date of the instru-ment, namely, June 22, 1948, inquiry must be directed to de-termine whether the will contains any direction against prora-tion which satisfies the statutory mandate of § 2076 that prora-tion shall be the rule "except when a testator otherwise directs in his will." Our Supreme Court in McLaughlin v. Green, supra, 145, adopted the following language: "In the absence of a definite declaration on the subject it must be presumed that the intention was that the ultimate weight of taxation must rest where the law places it. It cannot be presumed that anything else was intended than what is stated in the written instrument." This statement would seem to make it abundantly clear that a provision against apportionment or proration of taxes must be clear and unambiguous.

Mrs. McMillan contends that article first of her father's will, in employing the words "testamentary expense" is tantamount to a direction against proration. The language in *McLaughlin v. Green,* supra, which ordered and directed "the payment of all succession, transfer and inheritance taxes from my residuary estate," was interpreted, where an inter vivos trust was concerned, as not importing such a clear direction as would override the presumptive intent which the Proration Act imposes. The expressions "funeral and testamentary expense," "all expenses," and "necessary charges" have been held insufficient to vary the statutory incidence of the tax. *Matter of Walbridge,* 170 Misc. 127; *Matter of Stanfield,* 170 Misc. 447, aff'd, 257 App. Div. 932, 957; *Matter of Parsons,* 258 N. Y. 547. Similarly Mr. Jerome's use of the words "testamentary expenses" did not amount to a direction against proration.

If article first does not furnish the unequivocal direction against proration which the law requires, then the only other provisions of the will relied on by Mrs. McMillan are those portions of articles fifth and sixth which relate to the distribution of halves of the residuary estate. Her argument is that since Mr. Jerome's language appears to disclose an intention to deal equally with his widow and daughter and since the proration statute, in effect at the time of his death, confers the entire benefit of the marital deduction upon the trust for the widow, he could not have intended the proration statute to apply.

The mere fact that the will's direction is for the creation of equal trusts from the residue does not, of necessity, carry the connotation that the testator intended ultimate equality between the beneficiaries. The error inherent in the position asserted by Mrs. McMillan may be thus demonstrated. Let us suppose that the widow and the daughter were allowed different inheritance tax exemptions and suppose that the exemption allowed a widow was greater than that allowed a daughter, could it then be said that the widow is to lose a part of her exemption so that after the payment of taxes, the net value to the legatees would be equal?

An analogous situation was presented in *Uber's Estate,* 330 Pa. 417, wherein the residuary estate of the decedent was divided into two equal parts, of which one was given to the brother of the decedent and the other to his daughter. The Pennsylvania Supreme Court said (p. 421) : "Here, the full equal half parts given to the brother and the daughter are, as far as the language

indicates, not equal net, but equal *gross* shares. In the case of every will where there are gifts of equal half parts of an estate, and one of the legatees is a lineal descendant and the other a collateral relative of the testator, the liabilities for their respective inheritance taxes will make their net legacies unequal notwithstanding the prescribed equality; such a result can be avoided only by an unequivocal testamentary direction that the *net* shares, after the payment of the inheritance taxes, are to be equal and the taxes to be paid out of the residuary estate as a whole. In the present case we find no such clear direction."

Examination of *Matter of Starr,* 157 Misc. 103, *In re Bayne's will,* 102 N. Y. S. 2d 525, and *Matter of McManamy,* 172 Misc. 392, indicates that application of the proration statute may not be avoided by establishing that its application disturbs a ratio of equality between legatees.

The situation is analogous to one in which a testator directs the distribution of his estate among his next of kin and the statute regulating descent and distribution is changed subsequent to the execution of the will but prior to death. New York's Court of Appeals in *Matter of Koch,* 282 N. Y. 462, 465, has said: "Lines of inheritance are governed by statute and it must be assumed that the testatrix knew that those lines could be changed at any time."

The purpose of the Connecticut Proration Act is unmistakable. Formerly estate taxes were payable out of the residue and legatees and other classes of beneficiaries, including those taking outside the will, did not bear their proportionate share of estate taxes. Beneficiaries entitled to exemptions or deductions likewise lost the benefit of them. The Proration Act has, as one of its purposes, the allocation of the benefits of an exemption or deduction to the person entitled to have it. When the Revenue Act of 1948 became law, the application of the proration statute was automatic, as, indeed, the General Assembly intended it to be if the Congress were to create new exemptions or deductions. As a necessary result, a widow, in the absence of clear language in the will to the contrary, should take her share free from taxes.

This result seems entirely reasonable and equitable. Under the marital deduction provisions of the federal statutes that portion of the estate which passes to the widow does not create or add to the tax burden of the estate. The marital deduction not only reduces the over-all taxes which the estate pays by re-

ducing the gross estate subject to taxation, but it also places the entire estate in lower tax brackets. If the claims advanced by Mrs. McMillan should be allowed to prevail, Mrs. Jerome will be called upon to pay one-half of the taxes computed on that portion of the estate which goes to Mrs. McMillan, while Mrs. McMillan will be receiving one-half of the tax exemption which the law gives to Mrs. Jerome as a widow, and to that extent, Mrs. McMillan's share will be escaping a portion of the tax on its own value. Such a result should receive no encouragement in the face of the mandate of the General Assembly that pro-ration must be applied unless the testator has clearly expressed a contrary direction.

On the issues framed by the complaint and Mrs. Jerome's cross complaint, the plaintiffs, as executrices, are advised:

1. The will of Franklin S. Jerome does not contain a direction against proration of the federal estate tax and the Connecticut estate tax.

2. The federal estate tax and the Connecticut estate tax should be prorated under the Connecticut Proration Act.

3. The trust established under article fifth of said will for the benefit of Janet Pouch Jerome is exclusively entitled to the benefit of the marital deduction as provided for under the pro-visions of the Revenue Act of 1948 in computing the allocable part of the tax to be borne by said trust.

4. The trust established under article sixth of said will for the benefit of Louise Jerome McMillan is not entitled to the benefit of one-half of the marital deduction as provided for under the provisions of the Revenue Act of 1948.

Counsel, within ten days from date, are requested to file, in writing, their detailed claims for counsel fees and expenses that reasonable allowances may thereafter be made by the under-signed.

Judgment accordingly.